J-S40023-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| KAVON LEE | : | |
| | : | |
| Appellant | : | No. 1762 EDA 2023 |

Appeal from the Judgment of Sentence Entered March 17, 2023
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0004803-2021

BEFORE: STABILE, J., McLAUGHLIN, J., and LANE, J.

MEMORANDUM BY McLAUGHLIN, J.: **FILED APRIL 3, 2025**

Kavon Lee appeals from the judgment of sentence entered following his guilty plea to third-degree murder, conspiracy, and carrying a firearm without a license.[1] This case returns to us following remand for filing of a Pa.R.A.P. 1925(b) statement *nunc pro tunc* and a responsive Pa.R.A.P. 1925(a) opinion. Lee challenges the discretionary aspects of sentencing. We affirm.

The Commonwealth gave the following recitation of the underlying facts at the guilty plea hearing:

> [On] March 2nd of 2020[,] [o]fficers were called to the location at approximately 5:10 p.m. and that location would be 3900 Olive Street. . . . Officer Carr . . . of the 16th District, arrived and he saw the decedent, Nyfeic Hawkins, a 19-year old black male, lying face down suffering from multiple gunshot wounds. He transported Mr. Hawkins to

_____

[1] 18 Pa.C.S.A. §§ 2502(c), 903, and 6106(a)(1), respectively.

Presbyterian Hospital where he was pronounced [dead] at 5:45 p.m.

The remains of Mr. Hawkins were examined by Dr. Victoria Sorokin, who determined after her examination that the cause of death was gunshot wounds to the torso and that the manner of death was homicide.

Specifically, her report outlines 14 gunshot wounds that were documented.

\*\*\*

The assigned investigators recovered surveillance video footage from the area and that footage captured the shooting at the playground on the date and at the time in question. The footage depicted two individuals, one in a green sweatsuit, and one in a red sweatshirt, shooting the decedent several times simultaneously to one another at the same time, in other words, and then fleeing the scene.

On March 10, 2020, a search warrant was executed at 650 Union Street, which is [Lee's] home where a firearm was recovered, a loaded Ruger .357 caliber. [Lee] was interviewed by homicide detectives. He stated to detectives that – well, he admitted that he was at that location at that date and that he was the person wearing the green sweatsuit. [Lee] did not have a valid permit to carry a firearm at the time of the incident.

N.T., Guilty Plea Hearing, 1/20/23, at 18-19, 20.

At sentencing, the court heard from Lee's mother and the victim's mother, aunt, and grandfather. Lee apologized to the victim's family and told the court, "I'm here today to take action for my actions." N.T., Sentencing Hearing, 3/17/23, at 32. The court reviewed the Presentence Investigation ("PSI") report and heard from counsel regarding Lee's mitigating factors such as Lee's age at the time of the crime and that he took responsibility by

pleading guilty. *See id.* at 9-10. Before imposing its sentence, the court

considered several factors and explained its reasoning as follows:

> I will take into account the allocution that [Lee] just gave, the information in the presentence report, all of the mitigating factors that were presented specifically by defense counsel and are contained in the presentence report, which I'll get to in a couple minutes here.
>
> I'll also take into account the investigation of prior record score and the sentencing guidelines, which I'm required to do. I will take into account the statutory factors I'm required to consider, the need for the protection of the public. I do have some concerns. I know Mr. Lee has accepted responsibility and expressed remorse, but the behavior I witnessed in the video is not the behavior anybody would see of a person with normal sensibilities.
>
> To come upon a scene like that, pull out your gun and start shooting somebody, who at that point was grappling with someone else, and to continue to shoot the person as he was defenseless without a weapon and laying prone on the pavement, that's not just a small deviation from somebody's normal day. That reflects a character that gives me a significant concern for the protection of the public. I hope you're right when you tell me that you've changed and that's not the kind of thing you would do again. I don't have a crystal ball. I have concerns.
>
> I'll also take into account the gravity of the offense in relation to its impact on the victim and the community. We've just heard from the family, a devastating impact on this family. The community is plagued by this kind of gun violence in a public park. The decedent, who was very special to a lot of people, is gone forever. So those are factors I'm required to consider.
>
> Also your rehabilitative needs. As I said, there are many mitigating factors here which I'm going to take into account. Your remorse and acceptance of responsibility by pleading guilty. As counsel eloquently presented, as he always does, not requiring the family to go through a trial, with regard to your situation at least. You were young. And there's also the issue of the parity, which was expressed by your attorney.

There's a few things I would like to comment on with regard to that. First of all, these were not comparable situations in terms of what we viewed on the video. The video, while we've heard a lot of comments here, that don't make it clear whether or not Mr. Easley had a gun in his hand when that struggle started, and it's clear that they were engaged in a struggle. This defendant, you, sir, Mr. Lee, you walked upon the scene and started shooting. And based on the number of times you shot this person and the fact that you shot the person when they were completely helpless, that demonstrated, obviously, an intent to kill.

I understand your guilty plea, but the substantial aggravator that's present in this case is that in this case this is just not a typical third-degree murder case. It was part of the negotiation that you struck. But unquestionably, if this case had gone to a jury, it would have been a very high probability you would be getting sentenced to life in prison at this time, which is what the law provides for, somebody who intentionally kills another person. So I'm not persuaded by the parity argument.

When I consider everything, I think a standard range sentence is appropriate. And while I am bound by the high-low agreement, I think the agreement was appropriate and a sentence at the upper end of that agreement is completely appropriate. I'm comfortable imposing it. It reflects your remorse, your acceptance of responsibility, and the fact that this was a compromise to avoid a life sentence in this case, which would have been, in my view, a very likely outcome if you took the case to trial.

*Id.* at 33-36. The court imposed concurrent terms of 20 to 40 years' incarceration for third-degree murder and conspiracy, and two to four years' incarceration for the firearms conviction, for an aggregate term of 20 to 40 years. Lee filed a post-sentence motion, claiming that the court's sentence was "excessive in light of his history and characteristics." Motion to Reconsider Sentence, filed 3/22/23, at ¶ 4. The court denied the motion and this timely appeal followed. *See* Order, filed 6/16/23; Notice of Appeal, filed 7/10/23.

Lee raises one issue:

> Whether the Sentencing Court erred in ordering a sentence for third[-]degree murder of twenty (20) to forty (40) years['] incarceration, and conspiracy of twenty (20) to forty (40) years['] incarceration (concurrent), that was at the top of the sentencing guidelines, when substantial mitigating circumstances exist including [Lee's] age, acceptance of responsibility, his remorsefulness, drug abuse, absence of adult criminal convictions and his rehabilitative needs at the time of sentencing?

Lee's Br. at 9 (answer of trial court omitted).

Lee challenges the discretionary aspects of his sentence. The trial court maintains that Lee is "barred" from challenging his sentence because his sentence was negotiated. Rule 1925(a) Opinion, filed 2/25/25, at 4 (citing **Commonwealth v. Dalberto**, 648 A.2d 16, 18 (Pa.Super. 1994)). We disagree.

"[T]he determination of whether discretionary aspects of sentencing may be challenged after a guilty plea is entered depends upon the actual terms of the plea bargain, specifically, to what degree a sentence agreement has been reached." **Dalberto**, 648 A.2d at 18. A defendant may enter an open or a negotiated guilty plea. An open guilty plea "is one in which there is no negotiated sentence." **Commonwealth v. Tirado**, 870 A.2d 362, 363 n.1 (Pa.Super. 2005). In other words, if "there have been no sentencing restrictions in a plea agreement, the entry of a guilty plea will not preclude a challenge to the discretionary aspects of sentencing." **Dalberto**, 648 A.2d at 20. However, if a plea agreement involves "a negotiated sentence which is accepted and imposed by the sentencing court, there is no authority to permit

- 5 -

a challenge to the discretionary aspects of that sentence." *Id.* (citation and quotation marks omitted, emphasis removed).

There are also "hybrid" plea agreements, which "fall[] somewhere between a negotiated plea and an open plea[.]" *Id.* at 21. When faced with these agreements, "our task is to determine the effect of [the] hybrid plea agreement on the right to challenge the discretionary aspects of [] sentence." *Id.* "A hybrid plea agreement does not preclude appellate review of those discretionary aspects of the sentence that were not agreed upon in the negotiation process." *Commonwealth v. Heaster*, 171 A.3d 268, 271 (Pa.Super. 2017).

Here, the record is unclear about the nature of the sentencing terms of the plea agreement. The trial court first appears to state in its Rule 1925(a) opinion that it was a negotiated plea. The court describes "the plea deal" as "sett[ing] a floor. . . and a ceiling" for Lee's aggregate sentence. Rule 1925(a) Op. at 1. The court similarly stated at sentencing that "[t]here was a high-low agreement at the guilty plea, which provided for a sentence somewhere in the range of 20 to 40 years in prison to 10 to 20 years in prison." N.T. Sentencing at 4.[2]

However, it also states in its Rule 1925(a) opinion that that the Commonwealth merely agreed to "recommend a sentence of between the

---

[2] *See also* N.T. Sentencing at 36 ("And while I am bound by the high-low agreement, I think the agreement was appropriate and a sentence at the upper end of that agreement is completely appropriate.").

range of 10 to 20 years['] incarceration and 20 to 40 years['] incarceration." *Id.* at 5. It made a similar pronouncement during the plea colloquy: "[T]he Commonwealth is going to recommend to me that you receive a sentence somewhere between the range of 10 to 20 years in prison and 20 to 40 years in prison." N.T. Guilty Plea at 22.[3] The plea colloquy forms are likewise ambiguous, stating first that the plea was open, only later to state that there was an agreement for a "high/low sentence between 20-40 and 10-20." *Compare* Colloquy for Plea of Guilty, Nolo Contendere, 1/20/23 at 1, *with* Guilty Plea Colloquy, 1/20/23, at 3.

The Commonwealth takes the position that "the parties agreed to an aggregate sentence of no less than 10 to 20 years of incarceration and no more than 20 to 40 years." Commonwealth's Br. at 4. Lee contends that his plea was open. *See* Lee's Br. at 13.

We need not attempt to resolve the confusion because the most restrictive sentencing agreement supported by the record – a high/low agreement for an aggregate minimum and maximum sentences within ranges – would be a hybrid plea that permits limited appellate review. Under such an agreement, the court was free to fashion a sentence within the specified limits. We may review its exercise of its discretion within those parameters. *See*

_____

[3] *See also* N.T. Guilty Plea at 17 ("I understand that you have an agreement with the Commonwealth where there is what you would call a cap on the sentence. In other words, the sentence would be somewhere between 10 to 20 years and 20 to 40 years in prison in the aggregate, and, of course, an 87 year sentence would be far in excess of that. I'm not bound by that cap. That would be a recommendation[.]").

***Heaster***, 171 A.3d at 271; ***Commonwealth v. Batchelor***, No. 2994 EDA 2022, 2024 WL 2148725, at *11 (Pa.Super. filed May 14, 2024) (unpublished mem.) (concluding that appellant did not waive challenge to discretionary aspects of sentence where plea agreement included "a limited agreement . . . that the minimum sentence is capped at 18 years, meaning that the maximum sentence that can be imposed is 18 to 36 years") (emphasis removed). Lee's argument that the plea was open does not foreclose our conclusion. His argument in substance is that the court imposed an excessive sentence, without giving sufficient consideration to mitigating factors. He does not advocate for a particular sentence, just a lower one.

"The right to appellate review of the discretionary aspects of a sentence is not absolute, and must be considered a petition for permission to appeal." ***Commonwealth v. Conte***, 198 A.3d 1169, 1173 (Pa.Super. 2018). We must determine whether: "(1) the appeal is timely; (2) the appellant has preserved his issue; (3) his brief includes a concise statement of the reasons relied upon for allowance of an appeal with respect to the discretionary aspects of his sentence; and (4) the concise statement raises a substantial question whether the sentence is inappropriate under the Sentencing Code." ***Commonwealth v. Green***, 204 A.3d 469, 488 (Pa.Super. 2019); ***see also*** Pa.R.A.P. 2119(f) (stating that an appellant who challenges the discretionary aspects of a sentence "shall set forth in a separate section of the brief a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of a sentence").

Here, Lee timely appealed, preserved his issue in a post-sentence motion, and has included a Rule 2119(f) statement in his brief. Lee also raised a substantial question: whether the court imposed an excessive sentence and failed to adequately consider his mitigating factors. *See Commonwealth v. Raven*, 97 A.3d 1244, 1253 (Pa.Super. 2014) ("an excessive sentence claim— in conjunction with an assertion that the court failed to consider mitigating factors—raises a substantial question"). We now address the merits of Lee's claim.

Lee argues that the court failed to consider his mitigating factors such as his age at the time of the crime, his drug abuse, and the remorse he expressed at the sentencing hearing. He alleges that the sentence imposed by the court would "incarcerate him. . . a significant period of time of his life" and does not address his rehabilitative needs. Lee's Br. at 26. Lee points out that the court did not discuss his mental health needs, treatment for his drug abuse, or any program he could enroll in upon release from prison.

Sentencing is within the discretion of the trial court and will not be disturbed absent an abuse of discretion. *See Commonwealth v. Rominger*, 199 A.3d 964, 970 (Pa.Super. 2018). "An abuse of discretion occurs where the record discloses that the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will." *Id.* (internal quotation marks and citation omitted).

When the court fashions its sentence, it must consider "the protection of the public, the gravity of the offense as it relates to the impact on the life

of the victim and on the community, and the rehabilitative needs of the defendant." 42 Pa.C.S.A. § 9721(b). Additionally, where the court had the benefit of a PSI, we may "assume the sentencing court was aware of the relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors." *Commonwealth Griffin*, 65 A.3d 932, 937 (Pa.Super. 2013) (citation and internal quotation marks omitted).

Lee's claim is meritless. Because the court had the benefit of a PSI report, we assume that the court was aware of all relevant information regarding Lee's character and weighed those considerations. Moreover, the court heard testimony from Lee's family, considered Lee's expression of remorse, was aware of Lee's age at the time of the offense,[4] and considered his rehabilitative needs. Thus, the record demonstrates that the court properly considered "the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant." 42 Pa.C.S.A. § 9721(b).

Judgment of sentence affirmed.

_____

[4] N.T., Sentencing, at 6.

- 10 -

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 4/3/2025